**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PABLO RAMOS,

               Plaintiff,

       v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,[1]

           Defendant.

Case No. EDCV 16-1747-JPR

**MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER**

**I.    PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed November 6, 2017, which the Court has taken under submission without oral argument.  For the reasons stated below,

---

[1] Nancy A. Berryhill is substituted in as the correct Defendant.  <u>See</u> Fed. R. Civ. P. 25(d).

1

1  the Commissioner's decision is affirmed.

2  **II.  BACKGROUND**

3      Plaintiff was born in 1962.  (Administrative Record ("AR")

4  145, 158, 437, 445.)  He completed sixth grade (AR 45, 103, 471,

5  544) and worked assembling campers for trucks (AR 103, 472).

6      On May 15, 2012, Plaintiff applied for DIB and SSI, alleging

7  that he had been unable to work since December 21, 2006, because

8  of degenerative disc disease; carpal tunnel; nerve radiculopathy;

9  morbid obesity; headaches on the "[r]ight [s]ide of [his] face

10 and head"; right-leg "pain, stiffness, lock[ing], numbness,

11 tingling, [and] weak[ness]"; right-arm "pain" and "weakness";

12 "pain" and "stiffness of the neck and back"; tailbone "pain" and

13 an inability to "sit, bend, [or] stand"; shoulder "pain";

14 depression; anxiety; and fatigue.[2]  (AR 145-46, 158-59, 437-452.)

15 After his applications were denied initially and on

16 reconsideration (see AR 171-72, 202-03, 279-83, 286-91), he

17 requested a hearing before an Administrative Law Judge (AR 293-

18 94).  Hearings were held on December 27, 2013, and December 30,

19 2014, at which Plaintiff, who was represented by counsel,

20 testified, as did a vocational expert.  (AR 67-127, 278.)  In a

21

22      [2] Plaintiff had previously applied for DIB on June 11, 2009.

23 (See AR 131.)  The application was denied, and the decision was
   affirmed by an ALJ on January 7, 2011.  (See AR 131-44.)  The

24 denial was affirmed by the district court on August 26, 2013.
   (AR 204-40); Ramos v. Colvin, No. EDCV 12-0872-JPR (C.D. Cal.

25 Aug. 26, 2013).  The ALJ here found that Plaintiff had
   demonstrated changed circumstances since that final decision,

26 however (AR 18), and thus the Chavez presumption does not apply.
   See Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1995) (as

27 amended Apr. 9, 1996) (citing Chavez v. Bowen, 844 F.2d 691, 693
   (9th Cir. 1988)).  Defendant does not contend otherwise.  (See J.

28 Stip. at 2-3.)

written decision issued January 22, 2015, the ALJ found Plaintiff not disabled. (AR 18-33.) Plaintiff sought Appeals Council review (AR 9), which was denied on June 20, 2016 (AR 1-5). This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth

4

step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform his past work; if so, he is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 21, 2006, the alleged onset date. (AR 20.) At step two, he concluded that Plaintiff had severe impairments of "degenerative disc disease; osteoarthrosis; history of right shoulder injury; and obesity." (AR 21.) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 22.) At step four, the ALJ found that Plaintiff had the RFC to perform light

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

work except that "he can occasionally perform postural activities; he cannot do above-shoulder reaching or work on the right; cannot have concentrated exposure to extreme cold, vibrations, or hazards; and is prophylactically limited to unskilled work secondary to pain." (AR 23.) Based on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (AR 27.) At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, he could perform three "representative" jobs in the national economy: "[s]ewing machine operator," DOT 786.682-026, 1991 WL 681012; "[s]hoe packer," DOT 920.687-166, 1991 WL 688001; and "[h]and bander," DOT 920.687-026, 1991 WL 687967. (AR 27-28.) Thus, the ALJ found Plaintiff not disabled. (AR 28-29.)

**V.   DISCUSSION**

Plaintiff argues that the ALJ erred in considering his combination of impairments (J. Stip. at 4-11), discounting his credibility (id. at 16-19), determining his RFC (id. at 23-26), and finding that he could perform other substantial gainful work available in the national economy (id. at 29-31). As discussed below, the ALJ did not err on any of these grounds. Accordingly, remand is not warranted.[4]

A.   The ALJ Properly Discounted Plaintiff's Credibility

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony. (Id. at 16-19.) The ALJ provided several sufficient reasons for doing so, however: Plaintiff's allegations were "inconsistent with the objective medical

---

[4] For efficiency, the court addresses the arguments in an order different than the parties.

evidence and the record as a whole," he "admitted typical activities of daily living," and his treatment "ha[d] been generally conservative in nature." (AR 24.) Thus, remand is not warranted on this ground.

### 1. Applicable law

An ALJ's assessment of the credibility of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36; see also SSR 96-7p, 1996 WL 374186 (July 2, 1996).[5] "First, the ALJ must determine whether the claimant has presented

---

[5] Social Security Ruling 16-3p, 2016 WL 1119029, effective March 16, 2016, rescinded SSR 96-7p, which provided the framework for assessing the credibility of a claimant's statements. SSR 16-3p was not in effect at the time of the ALJ's decision in this case, however, and therefore does not apply. Still, the Ninth Circuit has clarified that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (alterations in original) (quoting SSR 16-3p).

objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). In assessing credibility, the ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the

record, the reviewing court "may not engage in second-guessing."

Thomas, 278 F.3d at 959.

## 2. Relevant background[6]

Plaintiff first saw family practitioner Stanley H. Schwartz in February 2012. (AR 570-75.) He complained of indigestion, decreased libido, erectile dysfunction, joint swelling, back pain, headaches, numbness, tingling, and weight change. (AR 570-71.) Plaintiff reported "walking" for "[e]xercise" "7" times a week. (AR 574.) Dr. Schwartz observed that he had "normal[,] full range of motion of all joints," "normal muscle strength and tone," and "no deformity or scoliosis" in the thoracic or lumbar spine. (AR 572.) He ordered a CT scan of Plaintiff's brain and referred him to a neurologist. (AR 573-74.) The CT scan, which was conducted in March 2012, found "[a]tlantoaxial subluxation with narrowing of the spinal canal at the craniocervical junction" and "[m]ild flattening of the spinal cord," but the imaging was "otherwise normal." (AR 579-80.)

Plaintiff complained of headaches to Dr. Schwartz in October 2012 but "[d]enie[d] difficulty with concentration," "numbness," an "inability to speak," "falling down," "tingling," "visual disturbances," "weakness," "excessive daytime sleeping," or "memory loss." (AR 587.) In April 2013, Plaintiff reported "skin discoloration, swe[l]ling, and burning in [his] legs"; Dr. Schwartz diagnosed peripheral neuropathy in his feet and

---

[6] The Court begins its discussion of Plaintiff's medical records from after his January 7, 2011 unfavorable decision. A complete summary of his earlier medical records can be found in this Court's August 26, 2013 decision. (See AR 204-40.)

prescribed gabapentin.[7]  (AR 609, 611-12.)  He also assessed
Plaintiff's back pain as "[i]mproved" and observed "no deformity
or scoliosis" in his "thoracic or lumbar spine."  (AR 610-11.)
In August 2013, Plaintiff was diagnosed with diabetes.  (AR 616-
17.)  In September and early November 2013, Dr. Schwartz observed
that Plaintiff's symptoms were essentially "unchanged."  (AR 628-
31, 636-39.)  In late November, Plaintiff complained of "constant
and stabbing" "pain in [his] bilateral low back" at a "6" out of
ten.  (AR 719.)  He stated that the "pain [was] made worse by
walking" but "[d]enie[d]" "fatigue" or "weakness."  (AR 719-20.)
He did not complain of headaches.  (See AR 719-21.)

     On February 25, 2014, Plaintiff had "constant, throbbing,
and aching" headache pain that was "worsening."  (AR 717.)  He
described the pain as being a "4" on a scale of one to 10.  (Id.)
The "pain [was] improved by medication," however, and Dr.
Schwartz described his symptoms as "stable."  (AR 716-17.)  He
refilled a nortriptyline prescription for the headaches.  (AR
716.)  Plaintiff also had "tenderness [in the] posterior portion
of [his] neck," but there was "no popping," and he was "able to
move in all directions."  (Id.)  At an appointment three days
later, Plaintiff reported "having a depressed mood most of the
day."  (AR 707.)  Dr. Schwartz wrote that Plaintiff's back and
headache pain were "[i]mproved."  (AR 711.)  Plaintiff had a
"normal[,] full range of motion of all joints" and "[d]enie[d]
muscle cramps, joint pain, joint swelling," "back pain,

----

     [7] Gabapentin is an anticonvulsant drug used to relieve nerve
pain.  See Gabapentin, WebMD, https://www.webmd.com/drugs/2/
drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last
visited May 1, 2018).

stiffness, muscle weakness, arthritis," "loss of strength, and muscle aches." (AR 708-09.) He further denied "headaches," "difficulty with concentration," "excessive daytime sleeping," "memory loss," "numbness," "tingling," and "weakness." (AR 708.) In March 2014, Dr. Schwartz diagnosed Plaintiff with hypogonadism.[8] (AR 696-99.) He also complained of "pain on [the] right side of [his] head." (AR 696.) In May 2014, he reported a "pain[ful]" "bump" on his chin that "burn[ed]" and was "made worse by touch." (AR 690-93.) Dr. Schwartz prescribed antibiotics to treat the lump. (AR 692.) He also prescribed Ultram[9] for Plaintiff's neuropathy in his feet. (Id.) By June 2014, the antibiotics had shrunk the lump but it was "still there." (AR 681.) The lump "[c]aus[ed] pain only [with] palpation," and Dr. Schwartz ordered a diagnostic ultrasound. (AR 681-82, 684.) The ultrasound identified "two hypoechoic nodules" that "most likely represent[ed] borderline enlarged lymph nodes." (AR 672.) In July 2014, Dr. Schwartz prescribed Plaintiff testosterone cypionate[10] to treat his hypogonadism and

[8] Hypogonadism occurs when the body doesn't produce enough testosterone, which can result in erectile dysfunction and decreased muscle mass in adult males. See Male Hypogonadism, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/male-hypogonadism/symptoms-causes/syc-20354881 (last updated Sept. 29, 2016).

[9] Ultram is a narcotic used to relieve moderate to moderately severe pain. See Ultram, WebMD, https://www.webmd.com/drugs/2/drug-11276/ultram-oral/details (last visited May 1, 2018).

[10] Testosterone cypionate treats symptoms of hypogonadism in males. See Testosterone Cypionate, Injectable Solution, Healthline, https://www.healthline.com/health/testosterone-cypionate-injectable-solution (last updated Mar. 27, 2017).

administered two injections over the next month.  (AR 669, 671,
675-76.)  Plaintiff did not complain of headaches at any of his
appointments in May, June, July, or August 2014.  (<u>See</u> AR 668-71,
673-76, 681-86, 690-93.)

Plaintiff first saw neurologist Maninder S. Arora in March
2012.  (AR 584.)  He prescribed Pamelor[11] to treat Plaintiff's
"recurrent [headaches]" but found him "normal" in all other
respects.  (<u>Id.</u>)  In May 2012, Plaintiff's headaches had
"[decreas]ed but not completely," and he complained of "pain in
the neck."  (AR 583.)  He "fe[lt] no side effects on Pamelor," so
Dr. Arora increased his dosage.  (<u>Id.</u>)  Dr. Arora reviewed
Plaintiff's CT scan results and opined that "he may not need
surgery presently."  (<u>Id.</u>)  In June 2012, Plaintiff reported that
his "pain [was] much better" and he had "no other new
complaints."  (AR 582.)  By October 2012, Plaintiff's "headaches
[were] under good control" "on Pamelor."  (AR 661.)  He "still
ha[d] off-and-on pain in [his] neck," but it was "significantly
improved."  (<u>Id.</u>)  He "denie[d] any symptoms in the upper or
lower extremities, any gait incoordination, or incontinence."
(<u>Id.</u>)  At each of Plaintiff's appointments with Dr. Arora in 2013
— the last occurring in October — Plaintiff's "headaches [were]
under good control."  (AR 655-60.)  His "neck movements [were]
limited and painful," but his "strength [was] 5/5."  (AR 655,
657, 659.)

---

[11] Pamelor is the brand name of nortriptyline, which is an
antidepressant used to treat chronic headache pain.  <u>See</u>
<u>Nortriptyline for Chronic Pain</u>, Headache and Migraine News,
http://headacheandmigrainenews.com/nortriptyline-for-chronic-
pain/ (last updated May 17, 2010).

On March 23, 2014, Plaintiff saw orthopaedic surgeon John
Tiberi for a consulting examination. (AR 650-54.) Plaintiff
alleged lower-back pain, right lower-leg pain, neck pain, and
right-shoulder pain. (AR 650.) He did not specifically mention
headaches. (See generally AR 650-54.) Dr. Tiberi observed that
he had a "normal posture" and "normal cervical lordosis, thoracic
kyphosis, and lumbar lordosis." (AR 652.) He found "no
tenderness to palpation" throughout Plaintiff's neck and lower
back and "no evidence of increased muscle tone or muscle spasm."
(Id.) Range of motion was "within normal limits" in his cervical
spine and "restricted to flexion of 70 [degrees] and extension of
15 [degrees]" in his thoracolumbar spine. (Id.) Plaintiff's
"[l]ateral bending [was] normal." (Id.) His "joint range of
motion [was] within normal limits" "with the exception of
adduction[,] which [was] limited to . . . 90 [degrees]." (Id.)
He had "full 4/5 strength" in [his] right upper extremity," "5/5
[strength] in [his] left upper extremity," and "5/5 strength
bilaterally in [his] lower extremities." (AR 653.)

Dr. Tiberi diagnosed Plaintiff with "[l]ower back pain with
right lower extremity radiculopathy," "[n]eck pain," and
"[s]houlder pain." (Id.) He limited him to pushing, pulling,
lifting, or carrying "50 pounds occasionally and 25 pounds
frequently" and walking and standing no more than "6 hours out of
an 8 hour day." (Id.) He assigned "[n]o" sitting restrictions,
"occasional" postural limitations, and "[n]o" hearing or seeing
restrictions. (AR 653-54.) Plaintiff's "[u]se of [his] hands
for fine and gross manipulative movements" had "[n]o
restrictions" except that "overhead activities with the right

upper extremity" were limited to an "occasional basis."[12] (AR 654.)

Plaintiff filled out an Adult Function Report on an unknown date.[13] (AR 485-92.) He stated that he regularly "t[ook] [his] kids to school, water[ed] [his] plants, pick[ed] up [his] kids from school, [and] walk[ed] in the park for 10 minutes" at a time while "tak[ing] breaks." (AR 485.) He had "[p]ain all over [his] back, neck and right leg" that made "sleep[ing]," "bend[ing]," "rais[ing] [his] right hand," and "sitting down" "very difficult." (AR 486.) His wife "ha[d] to remind [him] to take [his] medications" because he would often forget, and he couldn't prepare meals "due to pain." (AR 487.) He went "out about 4-5 times" a day; if his destination was "close by" he could go by himself, but if it was far he "need[ed] to take [his] wife with [him]." (AR 488.) He drove a car, shopped in stores, and went to church on Sundays. (AR 488-89.) He stated that he didn't partake in any social activities "[d]ue to [his] pain." (AR 490.) He checked boxes indicating that he "can't do any" of the following activities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair-climbing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and using his hands.

[12] Plaintiff complained at a later hearing that despite the report's notation to the contrary, no interpreter was present for his examination with Dr. Tiberi. (AR 114-16.) But the doctor's assessments noted here were the result of his personal examination of Plaintiff and do not rely on his statements. (See AR 650-64.)

[13] Although Plaintiff's function report is undated (see AR 492), his wife's similar one was filled out on September 6, 2012 (see AR 477-84).

14

(<u>Id.</u>)  He clarified as to walking that he could "go for about 10
minutes."  (<u>Id.</u>)  Plaintiff's wife also filled out a Function
Report, stating that she "ha[d] to help him dress and put on
socks and shoes," "scrub his back and feet," and "put on shaving
cream and shave."  (AR 478.)  She had to remind him to take his
medications, and he "c[ouldn't] use his right hand" or "carry
heavy items" "because of his pain."  (AR 479.)  He would "go
outside" "about 5 times a day" to water his plants, go grocery
shopping, drive his kids to and from school, or go for a walk.
(AR 477, 479-81.)  He could walk for "10 minutes" before needing
to rest and needed to rest for "15 minutes" before resuming
walking.  (AR 482; <u>but see</u> AR 73-74, 107 (testifying that he
could walk for "five minutes" before needing to rest).)

Plaintiff testified that he hadn't received any treatment
for his back or right shoulder since his workers' compensation
settlement in 2010.  (<u>See</u> AR 74-75.)  He stated that he
experienced "sharp" headache pain that occurred "[t]en times"
"daily."  (AR 79.  <u>But see</u> AR 110 (testifying one year later that
he got headaches "seven times a day").)  He had to "sit down,
relax, and not think about anything" for "five minutes" "to calm
down" after a headache.  (AR 79-80.)  His headache pain went
"down [his] right side," "through [his] neck," "to [his] shoulder
and arm," and "to [his] leg all the way down to the bottom of
[his] feet."  (AR 86; <u>see</u> AR 106.)  Plaintiff testified that he
"ke[pt] [him]self busy" to avoid headaches and did household
chores such as "cleaning the house with a broom" and "cook[ing] a
little bit."  (AR 108.)  He went to the Salvation Army "[o]nce a
week" to help "push" shopping carts back into place in exchange

for food.  (AR 109-11.)

### 3. Analysis

Plaintiff argues that the ALJ's "general" credibility findings were "not sufficient" to reject his pain testimony.  (J. Stip. at 16-19.)  He takes issue with the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they [were] inconsistent with [his RFC] assessment" (id. at 16 (citing AR 24)) and also contends that the ALJ's finding that his allegations were "inconsistent with the objective medical evidence" was improper (id. at 17 (citing AR 23-24)).  But the ALJ did not err in either regard and provided additional acceptable reasons not challenged by Plaintiff.  See Treichler, 775 F.3d at 1103 ("After making this boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why."); Tipton v. Colvin, No. 1:13-cv-00359-REB, 2014 WL 4773964, at *6 & n.5 (D. Idaho Sept. 24, 2014) (finding in case using nearly identical boilerplate language that "though the use of such common boilerplate language runs the risk of 'getting things backwards,' its mere use is not cause for remand if the ALJ's conclusion is followed by sufficient reasoning").

Contradiction with evidence in the medical record is a "sufficient basis" for rejecting a claimant's subjective symptom testimony.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (upholding "conflict between [plaintiff's] testimony of subjective complaints and the

16

objective medical evidence in the record" as "specific and substantial" reason undermining credibility).  Although a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing § 404.1529(c)(2)).  Not only did the ALJ properly consider the medical evidence, but it was not his sole basis for discrediting Plaintiff's testimony.

Specifically, despite Plaintiff's reports of extensive headache and back pain and associated limitations (see, e.g., AR 73-74 (Plaintiff claiming that he could walk for only five minutes before needing to rest), 76 ("stabbing pain" in shoulder), 79-80 ("daily" "sharp" pain in head), 86 ("sharp pain" "down [his] right side" "to the bottom of [his] feet"), 106 (same), 486 (claiming that "pain all over [his] back, neck and right leg" prevented him from sleeping)), the ALJ noted that his "prescribed medications" "seemed to control his headaches" (AR 21), his "diabetes [was] generally controlled with medications" (AR 23), he often showed "normal muscle tone and bulk" and "full muscle strength" (AR 24), and he was "not prescribed or given . . . additional treatment" for his back pain, which at several points was described as "improved" (AR 25; see also AR 611, 647, 711).  Further, although he testified that he experienced "stabbing pain" when moving his right arm above shoulder level (AR 76), his "physical examinations [did] not show significant continuing problems with his right shoulder" (see AR 26).

Indeed, Dr. Schwartz's annual physical examinations of

Plaintiff showed "no deformity . . . of [the] thoracic or lumbar spine," "normal full range of motion of all joints," and "normal muscle strength and tone." (See, e.g., AR 572 (Feb. 2012), 610 (Apr. 2013), 709-10 (Feb. 2014).) At these and other follow-up appointments, Plaintiff at times "denie[d] pain" (AR 706 (Feb. 2014)), "[d]enie[d] . . . sleep disorder[s]," "headaches, . . . numbness, . . . tingling, [or] weakness" (AR 708 (Feb. 2014)), or showed "improve[ment]" (AR 611 (Apr. 2013), 647 (same), 711 (Feb. 2014)). Dr. Arora noted that his "[r]eflexes [were] equal and normal," and his "[s]trength [was] 5/5." (AR 655, 657, 659.) His headaches were also "under good control," "stable," and "improved by medication," and at many of his doctor's appointments in 2014 he did not mention headaches at all, undermining his complaints of pain from them seven to 10 times daily. (See, e.g., AR 655-61, 668-71, 673-76, 681-86, 690-93, 716-17.) A CT scan of Plaintiff's brain showed "[m]ild" abnormalities but was "otherwise normal." (AR 579.) Thus, inconsistency between Plaintiff's complaints of pain and the objective findings in the record was a sufficient reason, together with the ALJ's other two reasons discussed below, to discount Plaintiff's credibility. See Carmickle, 533 F.3d at 1161; Burch, 400 F.3d at 681.

An ALJ may also properly discount the credibility of a plaintiff's subjective symptom statements when they are inconsistent with his daily activities. See Molina, 674 F.3d at 1113. "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of

a totally debilitating impairment."  Id.  Here, the ALJ found
that Plaintiff "admitted typical activities of daily living."
(AR 24.)  He noted that Plaintiff "[took] his kids to and from
school"; "cook[ed], clean[ed], water[ed] plants, and [took]
walks"; "[went] to church once a week"; "help[ed] his children
with homework and [went] to his children's school activities and
awards ceremonies"; "dr[o]ve"; and "[went] to Salvation Army
about once a week to get food and help return the shopping carts
back to their places."  (Id.)

Those findings were supported by substantial evidence in the
record.  See Reddick, 157 F.3d at 722 (ALJ may discount
subjective symptom statements when "level of activity [is]
inconsistent with Claimant's claimed limitations").  Plaintiff
himself reported that on a typical day he would "take [his] kids
to school, water [his] plants, pick up [his] kids from school,
[and] walk in the park."  (AR 485.)  He "[went] out about 4-5
times" each day (AR 488), drove a car (id.; see also AR 650,
707), went grocery shopping with his wife "twice a week" (AR
488), and went to church "on Sundays" (AR 489).  At his November
1, 2010 hearing, he acknowledged that his kids could take the bus
to school but he nonetheless drove them, and he admitted that
between taking his wife, who did not drive, places and
transporting his kids, he drove "[a]ll day."  (AR 55-57.)  He
testified that he "ke[pt] [him]self busy" "do[ing] []thing[s] in
the kitchen," did some chores like "cleaning the house with a
broom a little bit," and helped "push the carts" back in place at
the Salvation Army.  (AR 108-10.)

Plaintiff's subjective symptom allegations also contradicted

earlier statements and the record: although he wrote in his function report that he couldn't prepare his own meals "due to pain" and needed "reminders" from his wife to take his medications (AR 487), he testified that he "cook[ed] a little bit" (AR 108), and Dr. Schwartz noted that Plaintiff was independent in preparing meals and managing his medications, among other things (AR 706-07). Moreover, he checked boxes indicating that he couldn't do a large list of things — including lifting, bending, standing, walking, sitting, hearing, and seeing — that contradict his daily reported activities of driving, watering his plants, walking in the park, and preparing his own meals (AR 490; see also AR 485-89, 650, 707); his representation in his function report that he couldn't lift anything further contradicted his acknowledgment at the hearing that he could lift 25 pounds (AR 124). Plaintiff also claimed that he suffered from incapacitating headache pain requiring immediate breaks before resuming activity, but that did not prevent him from regularly driving much of the day (see AR 488, 650, 707), an activity requiring concentration and during which taking unscheduled breaks would be unsafe. He drove his children to and from school even though they apparently could take the bus. (AR 57.)

Thus, the ALJ properly found that Plaintiff's activities of daily living undermined the credibility of his subjective symptom statements. See Presley-Carrillo v. Berryhill, 692 F. App'x 941, 945 (9th Cir. 2017) (discounting claimant's testimony concerning disabling nature of symptoms when it conflicted with evidence of daily activities and effective treatment); Valentine v. Comm'r

Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff's daily activities "contradicted [his] contentions about how debilitating his fatigue was" constituted "clear and convincing reason to reject [his] subjective testimony"); Fernandez v. Astrue, No. CV 09-00109 AGR, 2010 WL 1875522, at *3 (C.D. Cal. May 7, 2010) (plaintiff's daily activities supported discounting his credibility when he was able to "walk two to three blocks," "take his children to school, do grocery shopping, pull out weeds, water plants, and work on his car").

Finally, the ALJ also found that Plaintiff's treatment "[had] been generally conservative in nature" through the time of his workers' compensation case and that subsequent "treatment notes show[ed] minimal positive findings with no significant deterior[]ation or additional medical difficulties." (AR 24.) Conservative treatment is a legitimate reason for an ALJ to discredit a claimant's testimony regarding the severity of an impairment. Parra, 481 F.3d at 751. As noted by the ALJ, Plaintiff's treatment "included only topical analgesic creams and oral medications for his pain."[14] (AR 24.) Such treatment qualifies as conservative. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("physical therapy and the use of anti-inflammatory medication, a [TENS] unit, and a lumbosacral corset" qualified as conservative treatment); Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (narcotic medication, physical therapy, and single

---

[14] The two testosterone injections Plaintiff received were treatment for erectile dysfunction from hypogonadism, an impairment for which he alleges neither severity nor pain. (See generally J. Stip.)

21

injection amounted to "conservative treatment"); <u>Rodriguez v.</u>
<u>Colvin</u>, No. CV 14-03731 AJW, 2016 WL 552648, at *2 (C.D. Cal.
Feb. 10, 2016) (treatment "conservative" when Plaintiff with
diabetes, back pain, and arthritis was treated with medications,
including gabapentin).

Moreover, his prescribed medications apparently controlled
many of his symptoms. "Impairments that can be controlled
effectively with medication are not disabling for the purpose of
determining eligibility for SSI benefits." <u>Warre v. Comm'r of</u>
<u>Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ
noted that Plaintiff's "headaches were under good control with
Pamelor" (AR 21), and his "diabetes [was] consistently noted to
be controlled" (<u>id.</u> (citing AR 662, 668, 670, 673); <u>see also</u> AR
23). Treatment notes for Plaintiff's headaches confirm that
medication was effective in lessening his pain. (<u>See, e.g.</u>, AR
582 (June 2012: "pain [was] much better" after beginning
Pamelor), 655-56 (Oct. 2013: headaches "under good control" and
"better controlled" with Pamelor), 657-58 (June 2013: headaches
"under good control" and "well controlled"), 659-60 (Jan. 2013:
headaches "under good control" with no "new problems"), 661 (Oct.
2012: same), 711 (Feb. 2014: headaches "[i]mproved"), 716 (Feb.
2014: headaches "stable"), 717 (Feb. 2014: headache pain
"improved by medication).) Indeed, at many doctor's appointments
Plaintiff didn't even mention his headaches. (<u>See, e.g.</u>, AR 668-
71, 673-76, 681-86, 690-93.)

Further, although Plaintiff consistently complained of low-
back pain, he was never prescribed medication specifically to
treat that issue. (AR 25); <u>see</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428,

1434 (9th Cir. 1995) ("absence of medical treatment for [plaintiff's] back problem" clear and convincing reason to discount pain testimony). Thus, Plaintiff's conservative treatment was a clear and convincing reason to discount his credibility.[15] See Tommasetti, 533 F.3d at 1039-40; Peery v. Berryhill, No. CV 16-01203-RAO, 2017 WL 1054181, at *5 (C.D. Cal. Mar. 20, 2017) (affirming "conservative treatment" when plaintiff's "headache medication help[ed] to control the severity of the headaches").

Accordingly, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

---

[15] Plaintiff testified that he didn't receive more aggressive treatment because his insurance refused to cover it. (AR 75-76, 86-87.) Failure to seek treatment because of insurance issues can be a valid reason for limited treatment. See Smolen, 80 F.3d at 1284 (Plaintiff "had not sought treatment" because "she had no insurance and could not afford treatment"); Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (holding that benefits cannot be denied when Plaintiff's failure to obtain treatment arises from lack of medical insurance). He also was prescribed Ultram, a narcotic, which could indicate that his treatment was not conservative. (AR 692); see Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010). But any problems obtaining authorization for further treatment are not reflected in records from the relevant period, and the Ultram wasn't prescribed until shortly before the ALJ's decision. Moreover, to the extent his treatment would not have been conservative absent insurance issues, or was not conservative because of his narcotic prescription, the ALJ provided at least two other clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, inconsistency with daily activities and lack of support in the objective medical evidence, and thus any error was harmless. See Larkins v. Colvin, 674 F. App'x 632, 633 (9th Cir. 2017) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)).

B.  **The ALJ Properly Considered Plaintiff's Combination of**
    **Impairments**

Plaintiff argues that the ALJ failed to properly consider the severity of his headaches in combination with the rest of his impairments. (J. Stip. at 4-11.)  For the reasons discussed below, the ALJ did not err in this regard.

1.  Applicable law

The step-two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290.  The claimant has the burden to show that he has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months, as demonstrated by evidence in the form of signs, symptoms, or laboratory findings.  See §§ 404.1505, 404.1520(a)(4)(ii), 416.905, 416.920(a)(4)(ii); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005).  A medically determinable impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."[16]  §§ 404.1520(c), 416.920(c); see also §§ 404.1521(a), 416.921(a) (2015).  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80

---

[16] "Basic work activities" include, among other things, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking." §§ 404.1521(b), 416.921(b); accord Yuckert, 482 U.S. at 141.

F.3d at 1290 (emphasis in original)). A court must determine whether substantial evidence in the record supported the ALJ's finding that a particular impairment was not severe. <u>Davenport v. Colvin</u>, 608 F. App'x 480, 481 (9th Cir. 2015) (citing <u>Webb</u>, 433 F.3d at 687); <u>see also</u> <u>Kent v. Astrue</u>, 335 F. App'x 673, 674 (9th Cir. 2009) (same).

## 2. <u>Analysis</u>

The ALJ found that Plaintiff's "migraine headaches" were "nonsevere" because they "[did] not affect [him] more than minimally." (AR 21.) He noted that a CT scan "did not show any significant findings" and Plaintiff's "prescribed medications" "control[led] his headaches." (<u>Id.</u>) Plaintiff argues that the ALJ improperly "found that [his] migraine headaches were not supported by [the] CT [scan] of [his] brain." (J. Stip. at 8-9.) He also points to his testimony and to treating records from Drs. Schwartz and Arora noting Plaintiff's complaints of headaches and neck pain. (<u>Id.</u> at 9.) The ALJ sufficiently supported his finding that Plaintiff's headaches were "nonsevere," however. (<u>See</u> AR 21.)

Plaintiff mainly argues that his testimony of chronic headache pain supports a finding of severity, but the ALJ properly discounted his subjective symptom testimony, as discussed above. And Plaintiff's treatment notes belie a finding that he complained of headache pain affecting him "more than minimally." (<u>See</u> <u>id.</u>) As noted by the ALJ (<u>id.</u>), Plaintiff's headache pain "[decreas]ed" (AR 583), felt "much better" (AR 582), and was "under good control" (AR 655-61) after Dr. Arora prescribed Pamelor. Although Dr. Arora wrote that Plaintiff's

"[n]eck movements [were] limited and painful" (AR 655, 657, 659;
see also AR 21), at one point the pain had "significantly
improved" (AR 661), and he recommended only "avoid[ing] . . .
jerky movements of the neck" and didn't prescribe other
medication (AR 656, 658, 660).  And at many appointments,
Plaintiff didn't mention headache pain at all.  (See AR 668-71,
673-76, 681-86, 690-93.)  The ALJ also considered Plaintiff's CT
scan but concluded that it "did not show any significant
findings."  (AR 21.)  Indeed, the imaging revealed largely
"normal" results, with only "[a]tlantoaxial subluxation with
narrowing of the spinal canal at the craniocervical junction" and
"[m]ild flattening of the spinal cord."  (AR 579.)  Dr. Arora
reviewed the CT scan and suggested obtaining a neurosurgeon's
opinion but advised that he "may not need surgery presently."
(AR 583.)  The record does not indicate that Plaintiff ever
sought or ultimately needed such surgery.[17]

Substantial evidence therefore supported the ALJ's severity
determination as to Plaintiff's alleged migraine-headache pain.
See Delanoy v. Berryhill, 697 F. App'x 917, 919 (9th Cir. 2017)
("The ALJ properly relied on the absence of record medical
evidence sufficient to support a determination that [plaintiff's]
migraines did not [sic] cause more than minimal limitation in

_____

[17] At his most recent hearings, Plaintiff testified that he
had trouble getting insurance authorization for "additional
treatment" but did not mention that such treatment he sought was
surgery.  (See AR 75-77, 86-87 (claiming that MediCal wouldn't
cover "physical therapy, injections, acupuncture," or
"medications").)  At the hearing for his prior decision, however,
he stated that his doctors "wanted to operate on [him]" but found
they could not because his "muscles . . . grew over [his]
disc[s]."  (AR 48-49, 52-53.)  Nothing in the record demonstrates
any such muscle growth.

[his] ability to perform basic work activities."); accord Neeley
v. Berryhill, 693 F. App'x 641, 642 (9th Cir. 2017).

C.    The ALJ Properly Determined Plaintiff's RFC for Light
Work

Plaintiff contends that the ALJ's RFC finding that he could
perform light work "is not supported by the record as a whole."
(J. Stip. at 23-26.)  His argument in support of this claim
relies almost entirely on citing law without applying it to the
facts of his case, but he apparently contends that he could not
fulfill light-work jobs' "continuous presence" requirement
because of his chronic headache pain.  (See id. at 24-25 (citing
Erickson v. Shalala, 9 F.3d 813, 818 (9th Cir. 1993)).)  For the
reasons discussed below, the ALJ did not err.

1.    Applicable law

A claimant's RFC is "the most [he] can still do" despite his
impairments and related symptoms, which "may cause physical and
mental limitations that affect what [he] can do in a work
setting."  §§ 404.1545(a)(1); 416.945(a)(1).  A district court
must uphold an ALJ's RFC assessment when the ALJ has applied the
proper legal standard and substantial evidence in the record as a
whole supports the decision.  Bayliss v. Barnhart, 427 F.3d 1211,
1217 (9th Cir. 2005).  The ALJ must consider all the medical
opinions "together with the rest of the relevant evidence [on
record]."  §§ 404.1527(b), 416.927(b);[18] see also

_____

[18] Social Security regulations regarding the evaluation of
opinion evidence were amended effective March 27, 2017.  When, as
here, the ALJ's decision is the final decision of the
Commissioner, the reviewing court generally applies the law in
effect at the time of the ALJ's decision.  See Lowry v. Astrue,
474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of

§§ 404.1545(a)(1); 416.945(a)(1) ("We will assess your residual

functional capacity based on all the relevant evidence in your

case record.").  In determining the RFC, the ALJ may consider

those limitations for which there is support in the record and

need not consider properly rejected evidence or subjective

complaints.  See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC

determination because "the ALJ took into account those

limitations for which there was record support that did not

depend on [claimant's] subjective complaints"); Batson v. Comm'r

of Soc. Sec. Admin, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not

required to incorporate into RFC those findings from treating-

physician opinions that were "permissibly discounted").

Jobs are classified as "sedentary, light, medium, heavy, and

very heavy" according to their "physical exertion requirements."

§§ 404.1567, 416.967.  "Light work" generally involves "lifting

no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds," though "the weight

lifted may be very little."  §§ 404.1567(b), 416.967(b); see SSR

83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).  Light work "requires

a good deal of walking or standing, or . . . involves sitting

most of the time but with some pushing and pulling of arm or leg

controls."  §§ 404.1567(b), 416.967(b); see SSR 83-10, 1983 WL

regulation in effect at time of ALJ's decision despite subsequent
amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647
(8th Cir. 2004) ("We apply the rules that were in effect at the
time the Commissioner's decision became final."); Spencer v.
Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D.
Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any
express authorization from Congress allowing the Commissioner to
engage in retroactive rulemaking").  Accordingly, citations to 20
C.F.R. §§ 404.1527 and 416.927 are to the versions in effect from
August 24, 2012, to March 26, 2017.

31251, at *5. "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." §§ 404.1567(b), 416.967(b).

2. <u>Analysis</u>

The ALJ limited Plaintiff to "light work" except that he could "occasionally perform postural activities; he cannot do above-shoulder reaching or work on the right; cannot have concentrated exposure to extreme cold, vibrations, or hazards; and is prophylactically limited to unskilled work secondary to pain." (AR 23.) As discussed above, the ALJ did not err in assessing Plaintiff's credibility or the severity of his headache pain.[19] Properly rejected medical evidence and subjective complaints do not need to be incorporated into a Plaintiff's RFC. See <u>Bayliss</u>, 427 F.3d at 1217; <u>Batson</u>, 359 F.3d at 1197. Thus, the ALJ did not err by assessing an RFC that didn't include certain limitations related to Plaintiff's headaches. Remand is not warranted on this basis.

D. <u>The ALJ Properly Found that Plaintiff Was Able to Perform Other Substantial Gainful Work Available in the National Economy</u>

Plaintiff argues that because the ALJ presented to the VE "hypothetical questions [that] did not represent [Plaintiff's] symptoms and limitations," the VE's testimony "cannot constitute substantial evidence." (J. Stip. at 29-31.) As discussed below, the ALJ did not err.

_____

[19] And Plaintiff acknowledged at the hearing that he could lift 25 pounds. (AR 124.)

1          1.   <u>Applicable law</u>

2     At step five of the five-step process, the Commissioner has

3 the burden to demonstrate that the claimant can perform some work

4 that exists in "significant numbers" in the national or regional

5 economy, taking into account the claimant's RFC, age, education,

6 and work experience.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th

7 Cir. 1999); see 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

8 §§ 404.1560(c), 416.960(c).  The Commissioner may satisfy that

9 burden either through the testimony of a VE or by reference to

10 the grids.  Tackett, 180 F.3d at 1100-01.  "A VE's recognized

11 expertise provides the necessary foundation for his or her

12 testimony," and "no additional foundation is required."  Bayliss,

13 427 F.3d at 1218.

14          2.   Relevant background

15     At Plaintiff's December 30, 2014 hearing, the ALJ asked the

16 VE about available work for a hypothetical individual with

17 Plaintiff's age, education, and past relevant work experience who

18 was limited to "light work" with "occasional posturals, no above-

19 shoulder reaching or work on the right side, no concentrated

20 exposure to extreme cold, vibration, or hazards, and limited to

21 unskilled work."  (AR 122-23.)  The VE responded that such an

22 individual could work as a sewing machine operator, shoe packer,

23 or hand bander.  (AR 123.)  Even if Plaintiff could stand or walk

24 for only two hours a day and would be off task 10 percent of the

25 time, the sewing-machine-operator job would remain available.

26 (AR 123-25.)

27

28

1          3.   <u>Analysis</u>

2          Plaintiff's contention that the ALJ failed to include

3     certain symptoms and limitations in his hypothetical to the VE

4     simply restates his arguments about credibility, impairment

5     severity, and his RFC that are addressed above.  <u>See</u> <u>Stubbs-</u>

6     <u>Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In

7     arguing the ALJ's hypothetical was incomplete, [plaintiff] simply

8     restates her argument that the ALJ's RFC finding did not account

9     for all her limitations because the ALJ improperly discounted her

10    testimony and the testimony of medical experts.")  The

11    hypothetical the ALJ gave to the VE closely corresponds with the

12    RFC he ultimately assigned to Plaintiff.  (<u>Compare</u> AR 23 (RFC),

13    <u>with</u> 122-23 (hypothetical).)  He was not required to include in

14    the RFC or the VE hypothetical limitations that were permissibly

15    discounted.  <u>See</u> <u>Batson</u>, 359 F.3d at 1197; <u>see also</u> <u>Yelovich v.</u>

16    <u>Colvin</u>, 532 F. App'x 700, 702 (9th Cir. 2013) ("Because the RFC

17    was not defective, the hypothetical question posed to the VE was

18    proper.").

19         Accordingly, remand is not warranted on this basis.

20    **VI.   CONCLUSION**

21         Consistent with the foregoing and under sentence four of 42

22    U.S.C. § 405(g),[20] IT IS ORDERED that judgment be entered

23

24

25

26         [20] That sentence provides: "The [district] court shall have
27    power to enter, upon the pleadings and transcript of the record,
      a judgment affirming, modifying, or reversing the decision of the
28    Commissioner of Social Security, with or without remanding the
      cause for a rehearing."

AFFIRMING the Commissioner's decision, DENYING Plaintiff's

request for remand, and DISMISSING this action with prejudice.


DATED: May 3, 2018 _____

JEAN ROSENBLUTH
U.S. Magistrate Judge